[Cite as *In re W.W.*, 2024-Ohio-878.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| W.W. and E.S., | : | Case No. 23CA24 |
| | : | |
| Adjudicated Dependent | : | |
| Children. | : | |
| | : | |
| | : | |
| | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | **RELEASED 3/06/2024** |

_____

### APPEARANCES:

Christopher Bazeley, Cincinnati, Ohio, for Appellant.

Timothy L. Warren, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for Appellee.

_____

Smith, J.

{¶1} Appellant, Jessica Smith, appeals the trial court's decision that granted legal custody of her two children to Donald and Rita Smith, the children's maternal grandfather and step-grandmother ("the grandparents"). For the reasons that follow, we do not find any merit to Appellant's assignments of error. Therefore, we overrule Appellant's assignments of error and affirm the trial court's judgment.

## FACTS

{¶2}   On December 13, 2022, Athens County Children's Services (hereinafter "Agency") filed complaints that alleged W.W. (born December 4, 2011) and E.S. (born February 28, 2013) are neglected and dependent children. The agency alleged that Appellant fails to ensure that the children attend school on a consistent basis and that E.S., who has developmental issues, loses "weight and regresses in his development when he does not attend school."  The agency further averred that (1) E.S. has poor hygiene, (2) Appellant did not take E.S. to a doctor to examine his "severe dry skin," (3) Appellant's home reportedly is not in a safe condition, and the agency has been unable to enter the home to verify the allegation, and (4) Appellant reportedly uses drugs.  The agency requested the court to grant it protective supervision.

{¶3}   On February 8, 2023, the parties stipulated that (1) Appellant needs to attend a school meeting for E.S and follow any recommendations, and (2) "[a]ny unsafe people that are residing" in Appellant's home "shall be required to move out of the family's home."

{¶4}  On March 27, 2023, the trial court adjudicated the children dependent and dismissed the neglect allegations.[1]  The court allowed Appellant to maintain custody of the children subject to the agency's protective supervision.

{¶5}  On May 12, 2023, the court granted the agency emergency ex parte custody of the children.[2]

{¶6}  On May 15, 2023, the agency filed a motion for emergency custody of the children and asked the court to place them in the legal custody of their grandparents.[3]  The agency alleged that (1) Appellant continues to allow an unsafe individual to reside in her home, (2) Appellant continues to test positive for amphetamines and methamphetamines and refuses treatment, (3) Appellant's "home is in deplorable conditions," and (4) Appellant "refuses to cooperate with the children's medical needs and has threatened to take the children out of state."

{¶7}  On that same date, the agency filed a motion to modify the dispositional order from protective supervision to legal custody to the grandparents.  The court subsequently granted the grandparents temporary custody

---

[1] The court's entry states that on February 14, 2023, it held the adjudication and disposition hearing, but the entry was not filed until March 27, 2023.

[2] Other than the agency's May 15, 2023 motion, the record does not contain any information regarding the reason for the court's May 12, 2023 ex parte order.

[3] Although the agency's motion mentioned only the maternal grandfather, the trial court treated the agency's request as a request to place the children in the maternal grandfather and step-grandmother's legal custody.  And at the hearing, the grandfather asked the court to place the children in his and his wife's legal custody.

of the children pending a dispositional hearing regarding the agency's motion to modify the protective supervision order.

{¶8}  On June 23, 2023, the trial court held a hearing to consider the agency's request to place the children in the grandparents' legal custody. Caseworker Melissa Stewart testified as follows.  The case plan identified the following concerns:  (1) Appellant had individuals residing at her home who had criminal backgrounds or who posed safety concerns for the children; (2) E.S had not been attending school consistently; and (3) substance abuse.  Appellant had filed a protection order against one of the individuals residing in the home, and this individual has since been arrested.  An individual who resided in the garage is a registered sex offender, and another individual has an open case with the agency. Appellant reportedly has a new boyfriend, and this new boyfriend has a criminal history.

{¶9}  E.S. has Mowat-Wilson Syndrome and cannot walk independently. He uses a walker and is being fitted for leg braces.  E.S. attends a school for special needs.  Before being placed with the grandparents, he had missed around 100 days of school since the start of the school year.  Since being placed with the grandparents, E.S. has been attending school consistently and has made progress.

{¶10} Appellant's home had a lot of clutter and debris that made it environmentally unsafe for the children.  Appellant initially declined the agency's

assistance with cleaning up the home, but in May 2023, Appellant accepted help. Stewart has been unable to assess Appellant's current home environment. Stewart recently made two unannounced visits, and Appellant was not home.

{¶11} Appellant continues to test positive for drugs. The agency referred Appellant for counseling but Appellant did not believe that she needed help with her substance abuse. Appellant stated that "she would do it just so it looks good when she goes to court." Appellant also stated that she would seek mental health counseling. At the beginning of June 2023, Appellant reported that she had an intake appointment scheduled for June 8 and that she would be receiving mental health and substance abuse counseling through Integrated Services.

{¶12} Stewart explained that even though the court did not place the children in the grandparents' legal custody until the middle of May 2023, the children had been staying with the grandparents since January 2023. Between January and May 2023, Appellant visited the children "a few times." Between May 31, 2023, and the date of the hearing, June 23, Appellant visited the children four times.

{¶13} Stewart has visited the children at the grandfather's home. They appear "very happy" and appear "to do well." E.S. "has shown so much progress inside and outside of school." W.W. stated that "he's liking being at his grandparents' home." W.W. recognized that Appellant has some troubles and

stated that he might want to stay with Appellant "someday," but for now, he would like to remain with his grandparents. W.W. informed the agency about appellant's new boyfriend, Calvin, and stated that Calvin also has a drug problem.

{¶14} Appellant testified that she made an appointment at Integrated Services, where she will be receiving substance abuse and mental health counseling. She has moved to a different home and intends to sell her current home. Appellant stated that she is willing to follow the case plan so that the children can be returned to her custody.

{¶15} Donald, the maternal grandfather, testified that the children have been living with him and his wife, Rita, since January 19, 2023. Between January and May 2023, Appellant visited the children about five times.

{¶16} Donald does not believe that the court should place the children with Appellant. He stated that Appellant does not have a safe place for the children to live, and "she still has the drug problem." Donald asked the court to grant legal custody of the children to him and Rita.

{¶17} On September 5, 2023, the trial court granted the grandparents legal custody of the two children. The court carefully evaluated the children's best interests and determined that placing the children in the grandparents' legal custody is in their best interests. Regarding the children's interactions and interrelationships, the court found that the two children are bonded with each other

and that Appellant loves and cares about her children.  The children have been residing with the grandparents who provide the children with a stable and safe environment and consistent care.  The court determined that "[t]he children are happy, healthy, and are progressing" while in the grandparents' care.

{¶18} With respect to the children's wishes, the court noted that "W.W. wishes to see his Mother, but is mature enough to verbalize that his Mother needs help and W.W. would like to remain with" the grandparents.  The court found that E.S. is unable to verbalize his wishes.

{¶19} Concerning the children's custodial history, the court noted that Appellant had legal custody of the children until May 12, 2023, but that the children have been living with the grandparents since January 2023.

{¶20} The court found that the children need a legally secure permanent placement and that they can only achieve this type of placement by granting legal custody to the grandparents.  The court concluded that the grandparents "are in the best position to provide a safe environment to allow the minor children to thrive."  The court found that Appellant "had been involved with risky individuals and situations."  The court recognized that Appellant has begun to take steps to improve her situation, but the court determined that Appellant "has historically failed to act when necessary to ensure that her children are in a safe and loving

environment."  The court found that Appellant's "lack of progress and past relationships exhibit [her] lack of ability to provide for a legally secure placement."

{¶21} The court thus placed the children in the grandparents' legal custody. The court awarded Appellant visitation with the children subject to the grandparents' discretion.  The court further ordered the parties not to "provide negative communication about an opposing party."  The court explained that the "case has harbored ill-will between the parties at times," which "could have an impact on the children in the future."  The court thus commanded:  "Negative communication must cease."  This appeal followed.

## ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT'S DECISION GRANTING DON
        LEGAL CUSTODY IS NOT SUPPORTED BY A
        PREPONDERANCE OF THE RECORD.

II.     THE TRIAL COURT ABUSED ITS DISCRETION BY
        LIMITING SMITH'S VISITS TO THOSE DON WILL
        ALLOW AT HIS DISCRETION.

III.    THE TRIAL COURT'S ORDER THAT THE PARTIES
        SHALL NOT HAVE ANY NEGATIVE COMMUNICATION
        IS UNWORKABLY AMBIGUOUS.

## ASSIGNMENT OF ERROR I

{¶22} In her first assignment of error, Appellant essentially argues that the trial court abused its discretion by granting the grandparents legal custody of the children.  She faults the trial court for failing to recognize that she has been

working on improving her circumstances.  Appellant states that she set up an intake appointment, plans to sell her house to remove herself from bad influences, and lives with her new boyfriend in a home that is in a "better condition" than her current home.

## STANDARD OF REVIEW

{¶23} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 14.  Consequently, we review a trial court's decision to award a party legal custody of an abused, neglected, or dependent child for an abuse of discretion, and we afford its decision "the utmost deference." *In re E.W.*, 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, ¶ 18, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *accord In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997) (stating that "a trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion"); *In re A.L.P.*, 4th Dist. Washington No. 14CA37, 2015-Ohio-1552, ¶ 15; *In re C.J.L.*, 4th Dist. Scioto No. 13CA3545, 2014-Ohio-1766, ¶ 12.  Ordinarily, "[t]he term 'abuse of discretion' implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re H.V.*, 138 Ohio

St.3d 408, 2014-Ohio-812, 7 N.E.3d 1173, ¶ 8.  In *Davis*, however, the court

explained the abuse-of-discretion standard that applies in child custody

proceedings as follows:

> The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:
>
> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)"
>
> The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:
>
> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *
>
> * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.  A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."
>
> This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well.

*Id.* at 418-419 (emphasis sic).

{¶24} Accordingly, reviewing courts should afford great deference to trial court child custody decisions. *A.L.P.* at ¶ 16; *E.W.* at ¶ 19, citing *Pater v. Pater*, 63 Ohio St.3d 393, 396, 588 N.E.2d 794 (1992). Additionally, because child custody issues involve some of the most difficult and agonizing decisions that trial courts are required to decide, courts must have wide latitude to consider all of the evidence, and appellate courts should not disturb a trial court's judgment absent an abuse of discretion. *Davis*, 77 Ohio St.3d 418; *Bragg v. Hatfield*, 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d 44, ¶ 24 (4th Dist.); *Hinton v. Hinton*, 4th Dist. Washington No. 02CA54, 2003-Ohio-2785, ¶ 9; *Ferris v. Ferris*, 4th Dist. Meigs No. 02CA4, 2003-Ohio-1284, ¶ 20. As the Ohio Supreme Court has emphasized:

> In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record.

*Trickey*, 158 Ohio St. at 13.

{¶25} Thus, this standard of review does not permit us to reverse a trial court's decision if we simply disagree with it. We may, however, reverse a trial court's custody decision if the court made an error of law, if its decision is unreasonable, arbitrary, or unconscionable, or if competent and credible evidence fails to support it. *Davis*, 77 Ohio St.3d at 418-419, 421 (explaining "abuse of

discretion standard" and stating that courts will not reverse custody decisions as against the manifest weight of the evidence if substantial, competent and credible evidence supports it; courts must defer to fact finder; courts may reverse upon error of law; and trial court has broad discretion in custody matters).

{¶26} "While we might be 'perplexed' by this hybrid abuse-of-discretion-manifest-weight standard, the Ohio Supreme Court has not overruled, modified, or clarified the standard set forth in *Bechtol* or *Flickinger*." *In re E.S.*, 4th Dist. Pickaway No. 17CA16, 2018-Ohio-1902, ¶ 23, citing *A.L.P.* at ¶ 23 (Harsha, J., concurring). We therefore continue to apply this standard when reviewing child custody matters that do not involve the termination of parental rights. *Id.*

## PARENTAL RIGHTS

{¶27} " 'The right of a parent to the custody of his or her child is one of the oldest fundamental liberty interests recognized by American courts.' " *State ex rel. Otten v. Henderson,* 129 Ohio St.3d 453, 2011-Ohio-4082, 953 N.E.2d 809, ¶ 31, quoting *In re Thompkins,* 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 10; *accord In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19; *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Consequently, "[p]arents have a constitutionally protected due process right to make decisions concerning the care, custody, and control of their children, and the parents' right to custody of their children is paramount to any custodial interest in

the children asserted by nonparents." *Mullen* at ¶ 11. Nevertheless, a parent's paramount right to custody of his or her children "is not absolute." *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. Instead, " 'the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla. App. 1974); *accord B.C.* at ¶ 20. Thus, once an abuse, neglect, or dependency case "reaches the disposition phase, the best interest of the child controls." *D.A.* at ¶ 11; *accord In re Pryor*, 86 Ohio App.3d 327, 332, 620 N.E.2d 973 (4th Dist.1993) (stating that "the primary, if not only, consideration in the disposition of all children's cases is the best interests and welfare of the child").

LEGAL CUSTODY STANDARD

{¶28} After a trial court adjudicates a child abused, neglected, or dependent, R.C. 2151.353(A)(3) authorizes the court to

> [a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

In addition, the court "may terminate or modify a prior dispositional order and award legal custody to a nonparent if doing so serves the child's best interest." *E.S.* at ¶ 27.

> "Legal custody" means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21). Although legal custody "is intended to be permanent in nature," R.C. 2151.42(B), it "is not as drastic a remedy as permanent custody because a parent retains residual rights and has the opportunity to request the return of the children." *In re Memic,* 11th Dist. Lake Nos. 2006-L-049, 2006-L-050, and 2006-L-051, 2006-Ohio-6346, ¶ 24 (citations omitted); *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

{¶29} In order to award legal custody of an abused, neglected, or dependent child to a parent or other person, a trial court must find, by a preponderance of the evidence, that legal custody to the parent or other person is in the child's best interest. *In re K.L.V.W.*, 8th Dist. Cuyahoga No. 112067, 2023-Ohio-1287, ¶ 28 and 30; *In re E.N.*, 4th Dist. Highland No. 21CA5, 2022-Ohio-116, ¶ 23. "A 'preponderance of the evidence' is 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.' " *In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818, ¶ 43 (4th Dist.), quoting Black's Law Dictionary 1182 (6th Ed.1998).

{¶30} Although the child's best interest is the controlling principle in determining whether to award a parent or other person legal custody, R.C.

2151.353(A)(3) does not list any factors that guide the best interest determination. Moreover, Ohio appellate courts have not settled on any particular best interest test that a trial court must apply when considering a R.C. 2151.353(A)(3) legal custody award. Instead, courts have looked to the best interest factors listed in R.C. 3109.04 or R.C. 2151.414, a combination of the two, or a general best interest test. *In re L.W.*, 3rd Dist. Wyandot No. 16-22-03, 2022-Ohio-3696, ¶ 62 ("juvenile courts may be guided by the factors listed in R.C. 2151.414(D)(1) (the permanent-custody factors) or R.C. 3109.04(F)(1) (factors employed in private-custody disputes)"); *In re Z.M.*, 10th Dist. Franklin No. 20AP-295, 2021-Ohio-3744, ¶ 31 ("courts have found the factors stated in R.C. 3109.04(F) to be instructive in determining the best interests of the child in an R.C. 2151.353(A)(3) legal custody case"); *In re V.P.*, 8th Dist. Cuyahoga No. 109649, 2020-Ohio-5626, ¶ 32 ("the factors in R.C. 2151.414(D) are not mandatory but instructive when making a best-interest-of-the-child determination in legal custody matters"); *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 12 (stating that courts may look to R.C. 3109.04(F) or R.C. 2151.414(D)); *In re E.H.*, 6th Dist. Ottawa No. OT-15-044, 2016-Ohio-8170, ¶ 17 (considering both R.C. 2151.414(D)(1) and 3109.04(F)(1)); *In re A.K.*, 2nd Dist. Montgomery No. 27575, 2017-Ohio-8100, ¶ 13 ("[i]n the context of a legal-custody motion, the pertinent best-interest factors are found in R.C. 3109.04(F)(1)"); *In re S.D.*, 5th Dist. Stark No. 2013CA0081,

2013-Ohio-5752, ¶ 33-34 (looking to R.C. 2151.414(D)(1) for guidance); *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25 ("courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the children"); *In re M.A.*, 12th Dist. Butler No. CA2011-02-030, 2012-Ohio-545, ¶ 16 ("[a]lthough there is no statutory mandate that the factors in R.C. 3109.04(F) be expressly considered and balanced before fashioning an award of custody under R.C. 2151.353(A)(3), a juvenile court is certainly entitled to consider those factors, as well as any other relevant factors, in making its custody determination"); *see also* Best Interests of the Child, Black's Law Dictionary (11th ed. 2019) (explaining that the best-interest-of-the-child standard is one "by which a court determines what arrangements would be to a child's greatest benefit, often used in deciding child-custody and visitation matters and in deciding whether to approve an adoption or a guardianship" and listing some of the best interest factors courts commonly consider as "the emotional tie between the child and the parent or guardian, the ability of a parent or guardian to give the child love and guidance, the ability of a parent or guardian to provide necessaries, the established living arrangement between a parent or guardian and the child, the child's preference if the child is old enough that the court will consider that preference in making a

custody award, and a parent's ability to foster a healthy relationship between the child and the other parent").

{¶31} This court traditionally has considered the best interest factors listed in R.C. 3109.04 when reviewing a trial court's legal custody decision in an abuse, neglect, or dependency case. *E.g., E.N.* at ¶ 25; *In re A.L.P.*, 4th Dist. Washington No. 14CA37, 2015-Ohio-1552, ¶ 17; *Pryor*, 86 Ohio App.3d at 336 ("in our opinion, the juvenile courts should consider the totality of the circumstances, including, to the extent they are applicable, those factors set forth in R.C. 3109.04(F)"). In the case at bar, however, the trial court considered the best interest factors contained in R.C. 2151.414(D)(1). We therefore will use this same statute when reviewing appellant's first assignment of error.

{¶32} After our review of the statutory factors, we do not believe that the trial court abused its discretion by placing the children in the grandparents' legal custody.

Children's Interactions and Interrelationships

{¶33} The trial court found that Appellant deeply cares about and loves her children but that she failed to take steps to ensure that they remained in a safe home environment. Moreover, W.W. expressed concerns about Appellant's troubles.

{¶34} The testimony indicates that the children are doing well in the grandparents' custody and that the grandparents meet all of the children's needs. Importantly, they ensure that E.S. attends school on a consistent basis and attends medical appointments, both of which E.S. needs in order to provide proper treatment for his disability. The grandparents appear to share positive relationships with both children.

### Children's Wishes

{¶35} W.W. stated that he is happy with the grandparents and that he might like to stay with Appellant once she overcomes her drug addiction. The trial court found that E.S. is unable to verbalize his wishes.

{¶36} The trial court did not make any findings regarding a guardian ad litem's recommendation, and nothing appears in the record. We note, however, that the trial court stated that a "CASA/GAL" appeared at the legal custody hearing.

### Custodial History

{¶37} The children lived with Appellant until January 2023. Since that time, they have lived with the grandparents, even though appellant had legal custody of the children until the court's May 2023 decision granting the grandparents temporary custody of the children.

### Legally Secure Permanent Placement

{¶38} The evidence supports the trial court's finding that the children need a legally secure permanent placement.  The agency deemed Appellant's home environmentally unsafe due to unsanitary conditions.  Appellant's home also exposed the children to a risk of harm.  Appellant lived with an abusive boyfriend, a registered sex offender, and another individual with a checkered past.  Moreover, Appellant had an uncontrolled substance abuse problem and unmanaged mental health issues.  At the time of the legal custody hearing, Appellant was residing with a new boyfriend who also reportedly had substance abuse issues, as well as a criminal history.  The trial court reasonably could have determined that Appellant does not have a legally secure permanent placement for the children and that placing them in the grandparents' legal custody is the only way that the children can achieve that type of placement.

{¶39} We recognize that shortly before the legal custody hearing, Appellant started to seek treatment to address her substance abuse and mental health issues.  Additionally, Appellant testified that she has removed herself from an abusive situation and from the registered sex offender living in her garage.  However, Appellant's efforts do not automatically show that the trial court abused its discretion by placing the children with the grandparents.  As we have observed in the past, a parent's efforts to improve the parent's situation or to comply with a case plan may be relevant, but not necessarily conclusive, factors when a court

evaluates a child's best interest. *In re Ca.S.*, 4th Dist. Pickaway No. 21CA10, 2021-Ohio-3874, ¶ 39-40; *In re B.P.*, 4th Dist. Athens No. 20CA13, 2021-Ohio-3148, ¶ 57; *In re T.J.*, 4th Dist. Highland Nos. 15CA15 and 15CA16, 2016-Ohio-163, ¶ 36, citing *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 34 ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40 ("[c]ompliance with a case plan is not, in and of itself, dispositive of the issue of reunification"); *accord In re C.W.*, 2nd Dist. Montgomery No. 28781, 2020-Ohio-6849, ¶ 19 ("[c]ase-plan compliance is not the only consideration in a legal custody determination"); *In re K.M.*, 4th Dist. Ross No. 19CA3677, 2019-Ohio-4252, ¶ 70, citing *In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 46 ("[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification"). "Indeed, because the trial court's primary focus in a [legal] custody proceeding is the child's best interest," a parent's case plan compliance is not dispositive and does not prevent a trial court from awarding legal custody to a nonparent. *W.C.J.* at ¶ 46. "Thus, a parent's case plan compliance will not preclude a trial court from awarding legal custody to a nonparent when doing so is in the child's best interest." *In re S.M.*, 4th Dist. Highland No. 23CA4, 2023-Ohio-2686, ¶ 44.

{¶40} Consequently, even if appellant has begun to seek treatment for her substance abuse and mental health issues and has begun to dissociate with unsavory characters, her efforts do not mean that the trial court abused its discretion by concluding that placing the children in the grandparents' legal custody is in their best interests.

{¶41} Appellant additionally faults the trial court for speculating as to her future behavior based upon her past conduct.  However, this court and others have recognized that "a parent's past history is one of the best predictors of future behavior." *In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶ 28; *e.g., In re B.J.*, 4th Dist. Scioto No. 22CA3991, 2022-Ohio-3307, ¶ 59; *In re B.B.*, 10th Dist. Franklin No. 20AP-488, 2021-Ohio-2299, ¶ 34; *accord In re A.S.,* Butler App. Nos. CA2004-07-182 and CA2004-08-185, 2004-Ohio-6323 ("[p]ast history is often the best predictor of future conduct."); *In re Vaughn*, 4th Dist. Adams No. 00CA692, 2000 WL 33226177, *7 (Dec. 6, 2000) ("[s]ome of the most reliable evidence for the court to consider is the past history of the children and the parents."); *In re Burchfield*, 51 Ohio App.3d 148, 156-57, 555 N.E.2d 325 (4th Dist.1988), quoting *In re Bishop*, 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987) (citations omitted) (" '[t]he unfitness of a parent, guardian or custodian can be predicted by past history' ").  Thus, when evaluating the children's best interests, the trial court could appropriately consider Appellant's past conduct.

{¶42} Accordingly, based upon the foregoing reasons, we overrule Appellant's first assignment of error.

ASSIGNMENT OF ERROR II

{¶43} In her second assignment of error, appellant argues that the trial court abused its discretion by limiting her visits to those that the grandparents will allow at their discretion. She contends that the trial court's decision does not adequately protect her right to reasonable visitation under R.C. 2151.011(B)(50).

{¶44} Appellate courts review a trial court's decision regarding a parent's visitation rights in the context of an abuse, neglect, or dependency action for an abuse of discretion. *In re K.W.*, 2018-Ohio-1933, 111 N.E.3d 368, ¶ 38 (4th Dist.), citing *In re C.J.*, 4th Dist. Vinton No. 10CA681, 2011-Ohio-3366, ¶ 11; *In re Carpenter,* 4th Dist. Washington No. 01CA26, 2002 WL 185569, *3 (Jan. 31, 2002); *e.g., In re L.S.*, 9th Dist. Lorain No. 21CA011770, 2022-Ohio-3281, ¶ 28. " '[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "A court abuses its discretion by taking action that lacks reason, justification, or conscience." *In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, 93 N.E.3d 937, ¶ 8. "An abuse of discretion includes a situation in which a

trial court did not engage in a ' "sound reasoning process." ' " *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).  The abuse-of-discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court.  *Darmond* at ¶ 34.

{¶45} Moreover, because a "definitive test or set of criteria" does not exist to guide a trial court's discretion when determining a noncustodial parent's visitation rights in a dependency action, courts should consider "the totality of circumstances as they relate to the child's best interest."  *K.W.* at ¶ 40, quoting *C.J.* at ¶ 15; *e.g., In re M.B.*, 2023-Ohio-1804, 216 N.E.3d 31, ¶ 36 (9th Dist.); *In re M.E.*, 10th Dist. Franklin No. 12AP-684, 2013-Ohio-2562, ¶ 22.  Trial courts also have " 'the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place, and to deny visitation rights altogether if visitation would not be in the best interest of the child.' "  *In re L.G.*, 3d Dist. Seneca No. 13-19-52, 2020-Ohio-3844, ¶ 35, quoting *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97-CA-239, 2000 WL 652540 (May 12, 2000); *e.g., M.B.* at ¶ 36, citing R.C. 2151.359(A)(1)(a) (noting that R.C. 2151.359(A)(1)(a) gives trial courts "the authority to [c]ontrol any [parental] conduct or relationship that

will be detrimental or harmful to the child[,] which includes the authority to limit or even prohibit parental visitation with a child placed in the legal custody of another adult").

{¶46} In the case at bar, we do not believe that the trial court abused its discretion by granting Appellant visitation subject to the grandparents' discretion. The trial court's decision protects the children's best interests by giving the grandparents discretion to decide whether Appellant has the capacity to keep the children safe while visiting them. The court reasonably could have determined that giving the grandparents discretion would promote the children's best interest by allowing the grandparents to determine whether, before permitting a visit, Appellant was under the influence of drugs, for example, or otherwise posed a risk of harm to the children. Moreover, giving the grandparents discretion "provides them with ongoing flexibility to meet the changing needs and schedules" of the children. *M.B.* at ¶ 39. Thus, we do not agree with Appellant that the trial court abused its discretion. *See generally id.* at ¶ 34 (upholding visitation order that gave parent "supervised visitation * * * as agreed and arranged by the parties").

{¶47} Accordingly, based upon the foregoing reasons, we overrule Appellant's second assignment of error.

## ASSIGNMENT OF ERROR III

{¶48} In her third assignment of error, Appellant contends that the trial court's order that the parties not have any negative communication is too ambiguous to be enforceable.

{¶49} To support her argument, Appellant cites a previous decision in which this Court stated that a trial court's judgment must be definite and unambiguous to be enforceable. *Brown v. Brown*, 183 Ohio App.3d 384, 2009-Ohio-3589, 917 N.E.2d 301, ¶ 20 (4th Dist.).[4] In *Brown*, we stated that to properly terminate an action, a trial court's judgment entry " 'must be definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case.' " *Id.* at ¶ 18, quoting *Harkai v. Scherba Industries, Inc.*, 136 Ohio App.3d 211, 216, 736 N.E.2d 101 (9th Dist. 2000). In other words, a trial court's judgment entry " 'must be worded in such a manner that the parties can readily determine what is necessary to comply with the order of the court.' " *Yahraus v. Circleville*, 4th Dist. Pickaway No. 00CA04, 2000-Ohio-2019, quoting *Lavelle v. Cox*, Trumbull App. No. 90–T–4396, 1991 WL 35642 (Mar. 15, 1991) (Ford, J., concurring). If a trial court's judgment "uses ambiguous or confusing language, or is otherwise indefinite, the parties and subsequent courts will be unable to determine how the parties' rights and obligations were fixed by

---

[4] In *Brown*, two judges concurred in judgment only.

the trial court." *Jones v. Jones*, 4th Dist. Highland No. 18CA10, 2019-Ohio-2684, ¶ 12 (citations omitted). Based upon these principles, we have indicated that a judgment does not properly terminate an action when it is " 'ambiguous, confusing, and not certain in itself.' " *Id.* at ¶ 12, quoting *Clyburn v. Gregg*, 4th Dist. Ross No. 09CA3115, 2010-Ohio-4508, ¶ 7.

{¶50} In *Brown*, for instance, we determined that the trial court's judgment was not final and appealable when it appeared subject to "different interpretations." *Id.* at ¶ 20. In *Yahraus*, we concluded that the trial court's judgment was not a final order when the court had failed to enter its own judgment in a matter referred to a magistrate. *Id.* at *5. In *Clyburn*, we were unable to "determine whether the trial court intended to terminate or modify a shared parenting decree" and found the court's judgment "void for vagueness." *Id.* at ¶ 12. And in *Jones*, we concluded that the trial court's divorce decree was not a final, appealable order because it failed to dispose of all the parties' property. *Id.* at ¶ 13.

{¶51} We do not find this line of cases apposite. In those cases, the judgment entries failed to properly dispose of the case and, thus, they did not constitute final, appealable orders. In the case at bar, the trial court's judgment granting the grandparents legal custody of the children is a final, appealable order. Thus, we do not believe that our previous cases in which we concluded that the

judgments were not final, appealable orders necessarily resolve the issue at hand. *See generally* Civ.R. 54, 2019 Staff Notes ("a judgment must order or decline to order a form of relief; what a judgment includes beyond that requirement should be left in the discretion of the issuing court").

{¶52} Moreover, we do not believe that the trial court's orders that the parties not "provide negative communication about an opposing party" and that "[n]egative communication must cease" are ambiguous.  The dictionary defines "provide" as follows:  "to supply or make available" or "to make something available to."  Merriam-Webster, *Merriam-Webster.com Dictionary*, *Provide*, https://www.merriam-webster.com/dictionary/provide (accessed Dec. 21, 2023).  "Negative" is an adjective that generally means "lacking positive qualities."  It also means "marked by features of hostility * * * that hinder or oppose constructive treatment or development," and "promoting a person or cause by criticizing or attacking the competition."  Merriam-Webster, *Merriam-Webster.com Dictionary*, *Negative*, https://www.merriam-webster.com/dictionary/negative (accessed Dec. 21, 2023).  "Communication" means "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior" or "a verbal or written message."  Merriam-Webster, *Merriam-Webster.com Dictionary*, *Communication*, https://www.merriam-webster.com/dictionary/communication (accessed Dec. 21, 2023).  And "cease"

means "to cause to come to an end * * * no longer continue." Merriam-Webster, *Merriam-Webster.com Dictionary*, *Cease*, https://www.merriam-webster.com/dictionary/communication (accessed Dec. 21, 2023). None of these definitions is ambiguous, and they fully define the meaning of the trial court's order. Consequently, we disagree with Appellant's argument that the court did not use sufficiently clear language to allow her to determine what is necessary to comply with the court's order.

{¶53} Appellant further asserts that the trial court's decision is ambiguous regarding any penalties for noncompliance. We observe, however, that trial courts possess "both the statutory authority under R.C. 2705.02(A) and the inherent power to punish the disobedience of its orders in contempt proceedings." *State ex rel. Simpson v. Melnick*, ___ Ohio St.3d ___, 2023-Ohio-3864, ___ N.E.3d ___, ¶ 6. Thus, if any of the parties violates the court's order, the court may hold the offending party in contempt.

{¶54} Additionally, R.C. 2151.359(A)(1) vests trial courts with " 'broad authority * * * to make orders controlling or restraining the parents of children adjudged dependent.' " *In re Knisley*, 4th Dist. Ross No. 97CA2316, 1998 WL 372703, *4 (May 26, 1998), quoting *In re Pieper Children*, 85 Ohio App.3d 318, 330, 619 N.E.2d 1059 (4th Dist.1993). Given that the trial court was in the best position to evaluate the parties' relationship, we cannot state that the trial court

abused its discretion by ordering the parties not to have "negative communication."[5]

{¶55} Accordingly, based upon the foregoing reasons, we overrule Appellant's third assignment of error.

CONCLUSION

{¶56} Having overruled Appellant's three assignments of error, we affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

---

[5] Appellant has not alleged that the trial court's order violates her right to free speech, so we do not address the issue. *See generally Bey v. Rasawehr*, 161 Ohio St.3d 79, 2020-Ohio-3301, 161 N.E.3d 529.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Hess, J., Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**