[Cite as *In re J.C.*, 2024-Ohio-1505.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| J.C. | : | Hon. Patricia A. Delaney, J. |
| J.C. | : | Hon. Craig R. Baldwin, J. |
| C.C. | : | |
| | : | Case No. 2022 AP 11 0044 |
| | : | 2022 AP 11 0045 |
| | : | 2022 AP 11 0046 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
                             Court of Common Pleas, Juvenile
                             Division, Case No. 20JN00324


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            April 19, 2024

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant Korenna Lint

LISA VITALE ARNOLD                        NICOLAS DOUGHTY
Tuscarawas County Job and Family          401 Tuscarawas Street West, Suite 201
Services                                  Canton, Ohio 44702
389 16th Street SW
New Philadelphia, Ohio 44663              For Appellee Joshua Cameron

Guardian ad Litem                         LISA CALDWELL
                                          203 Fair Avenue NE
GERRITT DENHEIJER                         New Philadelphia, Ohio 44663
222 West Main Street
Ravenna, Ohio 44266

*Baldwin, J.*

**{¶1}**    This matter is before this Court on remand from the Supreme Court of Ohio to apply the correct standard of review.

**{¶2}**    The Mother of J.C., J.C. and C.C. appeals the decision of the Tuscarawas Court of Common Pleas, Juvenile Division, granting permanent custody of the children to appellee, Tuscarawas County Job and Family Services.

## STATEMENT OF FACTS AND THE CASE

**{¶3}**    This case began with a report in December 2020 that appellant Mother had recently given birth to C.C. and that testing of the infant's meconium reflected high levels of methamphetamine. This discovery was reported to Tuscarawas County Job and Family Services (TCJFS) who promptly began an investigation and discovered that the parents tested positive for methamphetamines as well. The infant and two siblings, aged 4 and 6 at the time, were placed with their Great-grandparents under a voluntary safety agreement and a case plan was drafted and approved. The case plan contained obligations for the Parents and Great-grandparents.

**{¶4}**    TCJFS grew concerned about the Great-grandparents ability to care for the children and willingness to comply with the case plan. TCJFS moved to modify the placement, planning to remove the children from the Great-grandparents and place them in foster care absent locating another suitable and willing relative placement. The motion was heard on November 4, 2021 and the court granted the motion. During the hearing, TCJFS explained that suitable relatives were willing and able to accept the children, but that the background checks had not been complete. The proposed relatives were present

at the hearing and the trial court placed them under oath, questioned them about their criminal history and ordered that the children be placed with them pending the resolution of the efforts to reunify the children with their parents.

{¶5}     Though the relatives were willing to have the children placed with them, they discovered that these children needed more attention than they had the ability to provide and asked that they be placed elsewhere. TCJFS had consistently invited the parents to provide the names of other relatives that might be willing to assist, but none were found and the children were placed in the temporary custody of TCJFS. (Judgment Entry, March 14, 2022).

{¶6}     While the children were outside of the home, the parents had the opportunity to focus on the requirements of the case plan and to resolve the issues that caused the removal of the children from the home, but the record reflects they made little progress, particularly with regard to maintaining their sobriety. TCJFS concluded that the parents had not made sufficient progress toward curing the issues identified in the case plan and filed a motion for permanent custody on May 23, 2022. After that motion was filed the Great-grandparents filed a motion for legal custody May 25, 2022, seeking to have the children placed in their home.

{¶7}     After the children were removed, and before TCJFS filed the motion for permanent custody, Mother gave birth to another child. As she had been unable to resolve her drug habit and consistently tested positive for illegal substances, this child was also removed from her custody. That child's placement is not addressed in this case.

{¶8}     Also, during this period, it was determined that the father of J.C. and J.C. was not the father of C.C. as revealed by a DNA test. Mother initially insisted he was the

father, but conceded that another may be the father during a conversation with a case worker at a court hearing. The putative father was contacted, but he declined to become involved and refused to appear for a DNA test, so paternity of C.C. was undetermined at the time of the permanent custody hearing.

{¶9} At the permanent custody hearing, TCJFS offered the testimony of a psychologist, a counselor, the case worker and the guardian ad litem. The evidence supported a conclusion that the parents consistently tested positive for use of illegal drugs during the pendency of the case and had not demonstrated material progress in maintaining sobriety. The testimony further demonstrated that the parents contact with the children had been limited, in part due to their inability to maintain sobriety, and that they made little effort to see or have any contact with the children.

{¶10} The parents offered no evidence or testimony at the permanent custody hearing, but counsel for Mother did support the Great-grandparents' motion for legal custody.

{¶11} The Great-grandfather testified in support of his motion for legal custody, confirming that he and his wife believed that placement of the children with them was in the child's best interest. He agreed that his granddaughter's drug habit made her unsuitable to care for the children, but struggled to explain why he permitted his granddaughter to take a newborn home without insuring that she was no longer using drugs. He claimed that he could tell when she was under the influence, but did not appear confident that he would be able to act on that knowledge.

{¶12} TCJFS's concerns regarding Great-grandparents ability to care for the children was explored at the hearing that resulted in removal of the children from their

care in November 2021. Great-grandfather is seventy-one years old and has had both knees replaced, causing him discomfort during cold weather. His wife is sixty-five and though both claim to be in good health, the record shows that caring for three children under the age of six may present a serious challenge to them. The children were removed from their care in 2021 in part due to concerns that Great-grandparents were unable to match the children's energy and closely supervise them. The case worker testified that during her visit to the home while the children were placed with the Great-grandparents, J.C., four years old at the time, darted from the home without Great-grandmother noticing. The case worker also noted that the children were very active in the home and that one of the children climbed and jumped from a dresser. The youngest child, placed in the home as an infant, was left unattended on a bed rather than in a more secure crib.

{¶13} The case plan required Great-grandparents to complete a parenting program, obtain a fetal alcohol syndrome test for one of the children and an evaluation of the youngest child by the Help Me Grow Program. The Great-grandparents completed the parenting program, taking much more time than typically allotted, but failed the written test at the end of the program. They did not see that the fetal alcohol syndrome or Help Me Grow assessments were completed.

{¶14} The concern about the ability of the Great-grandparents to care for the children was aggravated by their belief that the children should be permitted to visit their mother despite her unabated drug habit. While they consistently stated they did not and would not permit contact, the record shows that they disagreed with that rule. These issues lead to the Court removing the children from their custody in November 2021.

**{¶15}** The Great-grandparents expressed their continued interest in obtaining custody of the children during the permanent custody hearing, but provided no evidence that their understanding of the needs and challenges of the children had changed or that they had invested any time preparing for the placement. Instead they relied upon their belief that the children would be devastated by their separation and that the trial court's decision taking the children from them in the past was based upon faulty evidence.

**{¶16}** The trial court granted the motion for permanent custody and denied the motion for legal custody. The Mother appealed and submitted one assignment of error:

**{¶17}** "I. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE MINOR CHILD'S BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶18}** On April 17, 2023, this Court affirmed the trial court finding it did not abuse its discretion by finding that the best interest of the child was served by granting permanent custody to TCJFS.

**{¶19}** The Ohio Supreme Court accepted the appeal for Case Number 2022 AP 11 0044 on the following certified-conflict question: "When reviewing a trial court's decision to terminate parental rights, is the appellate standard of review abuse of discretion, manifest weight of the evidence, clear and convincing evidence, or sufficiency of the evidence?" 169 Ohio St.3d 1439, 2023-Ohio-482, 203 N.E.3d 730. The Ohio Supreme Court remanded the case back to this Court finding "the proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards[.]" *In re*

*J.C.*, 2024-Ohio-877; *In re Z.C.*, --- Ohio St.3d ---, 2023-Ohio-4703, --- N.E.3d ---, ¶18. This Court sua sponte reopened Case Numbers 2022 AP 11 0045 and 2022 AP 11 0046, as they are related cases to 2022 AP 11 0044 impacted in the same manner.

## STANDARD OF REVIEW

**{¶20}** Mother is appealing the trial court's decision to grant the motion for permanent custody. Specifically, that the trial court should have granted the Great-grandparents' motion for legal custody. For that reason, we consider the standard of review applicable to both permanent custody and legal custody.

## PERMANENT CUSTODY

**{¶21}** The appellant contends the award of permanent custody was against the manifest weight of the evidence. Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on the grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio-355. The *Thompkins* Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be

established before them. Weight is not a question of mathematics,
but depends on its *effect in inducing belief*." (Emphasis added.)
Black's, *supra*, at 1594.

*Id.* at 387.

**{¶22}** The Court stated further:

When a court of appeals reverses a judgment of a trial court
on the basis that the verdict is against the manifest weight of the
evidence, the appellate court sits as a " 'thirteenth juror' " and
disagrees with the factfinder's resolution of the conflicting testimony.
*Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See,
also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215,
219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire
record, weighs the evidence and all reasonable inferences,
considers the credibility of witnesses and determines whether in
resolving conflicts in the evidence, the jury clearly lost its way and
created such a manifest miscarriage of justice that the conviction
must be reversed and a new trial ordered. The discretionary power
to grant a new trial should be exercised only in the exceptional case
in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶23}** In addition, "[I]n determining whether the judgment below is manifestly
against the weight of the evidence, every reasonable intendment and every reasonable
presumption must be made in favor of the judgment and the findings of facts. * * *" "If the

evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

### BURDEN OF PROOF FOR PERMANENT CUSTODY

{¶24} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

{¶25} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶26}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶27}** Following the hearing, R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a)      The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)      the child is abandoned;

(c)      the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)      the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶28} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. The statutory best interest test is set out in R.C. 2151.414(D)(1):

In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

## LEGAL CUSTODY

**{¶29}** Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the court's standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013–Ohio–5752, ¶ 32; *In re A.C.,* 12th Dist. No. CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

{¶30} The statutes regarding an award of legal custody do not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431. When determining the issue of legal custody, the trial court should consider the totality of the circumstances and all factors relevant to the best interest of the child. *In re D.T.,* 5th Dist. Stark No. 2013CA00252, 2014-Ohio-2495. "The statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17; *In re S.D.* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013–Ohio–5752, ¶ 33.

{¶31} We review the trial court's award of legal custody for an abuse of discretion and recognize that a trial court has broad discretion in proceedings involving the care and custody of children. *In re R.D.J.,* 5th Dist. Delaware No. 12 CAF 07 0046, 2013–Ohio–1999, ¶ 29, quoting *In re Gales,* 10th Dist. No. 03AP–445, 2003–Ohio–6309; In re Nice, 141 Ohio App.3d 445, 455, 2001–Ohio–3214, 751 N.E.2d 552; *In re Mullen*, 129 Ohio St.3d 417, 2011–Ohio–3361, ¶ 14. Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**ANALYSIS**

{¶32} The trial court resolved two motions, a motion for legal custody, filed by the Great-grandparents of the children, and a motion for permanent custody, filed by the Tuscarawas County Department of County Children's' Services. Both dispositions require

consideration of the children's best interest, though with different evidentiary standards. Before granting legal custody, the trial court must determine whether the preponderance of the evidence supports that result. Permanent custody, being a more drastic resolution requires the trial court to find clear and convincing evidence in support of the disposition.

**{¶33}** And, as noted above, we review the trial court's decision regarding permanent custody under a manifest weight of the evidence standard and for legal custody for an abuse of discretion.

**{¶34}** Mother submitted an assignment of error complaining that "[t]he trial court's finding that permanent custody was in the minor child's best interests was against the manifest weight of the evidence" but not because she had made sufficient progress on her case plan so that the issues that caused removal of the child from the home had been resolved. She did not present any evidence at the hearing on the motion for permanent custody to refute TCJFS's contention that she had made little progress in that regard. Most significantly, the record supported a conclusion that Mother continued to use amphetamines and methamphetamines without any evidence of material progress toward becoming sober. Mother is not contending that the children should be returned to her, but that "[i]t is in the best interest of the children to remain within the family environment under the care of the [Great-grandparents]." (Appellant's Brief, p. 4). Mother's counsel mentioned that she was in support of the Great-grandparents' motion for legal custody at the hearing on that motion and she repeating that position in her appeal of the trial court's decision.

**{¶35}** Our review is guided by precedent that makes clear that a trial court is not required to consider placing a child with a relative prior to granting permanent custody to

an agency. *In re Zoms*, Franklin App. No. 02AP–1297, 2003–Ohio–5664, ¶ 28; *In re Turner*, 5th Dist. Stark No. 2006CA00062, 2006–Ohio–4906, ¶ 35; *In re Perry*, 4th Dist. Vinton Nos. 06 CA 648, 06 CA 649, 2006–Ohio–6128, ¶ 62. Relatives seeking custody of a child are not afforded the same presumptive legal rights that a parent receives. *Id.* A trial court does not even need to find by clear and convincing evidence that a grandparent is not a suitable placement option. *In re A.D.,* Cuyahoga App. No. 85648, 2005–Ohio–5441, ¶ 12. Instead, it is within the trial court's discretion to determine whether to place children with a relative, such as grandmother. *In re Patterson,* 134 Ohio App.3d 119, 129–130, 730 N.E.2d 439(9th Dist.1999); *In re Poke*, 4th Dist. Lawrence App. No. 05CA15, 2005–Ohio–5226. We will reverse such a decision only upon an abuse of that discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶36}** The willingness of a relative to care for a child does not alter the statutory factors to be considered in granting permanent custody. *In re Keaton*; *In re Dyal; In re Jefferson* (Oct. 25, 2000), Summit App. No. 20092. The child's best interests are served by the child being placed in a permanent situation which fosters growth, stability, and security. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re Keaton; In re P.P.,* Montgomery App. No. 19582, 2003–Ohio–1051.

**{¶37}** As the Ohio Supreme Court has instructed, in deciding what is in a child's best interests, R.C. 2151.414 does not make the availability of a relative placement an

all-controlling factor; the statute does not even require the court to weigh that factor more heavily than other factors. *In re Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶ 63.

**{¶38}** The appellant does not contest the trial court's findings that the children "cannot and should not be placed with either parent within a reasonable time" and that "[t]he evidence supports a finding that despite diligent, reasonable efforts and planning by the Tuscarawas County Job and Family Services to remedy the problems which caused removal of the children, said parents have failed continually and repeatedly to substantially remedy the conditions causing removal." Judgment Entry, Oct 13, 2022, p. 7. The only issue under review is what disposition served the best interest of the children.

**{¶39}** The appellant points to the close relationship between the children and the Great-grandparents in support of their contention that they should receive legal custody. Great-grandfather testified in support of his motion for legal custody and focused upon refuting the trial court's November 2021 decision to remove the children from their custody and place them with an alternative family member, claiming that they did what was asked of them, appropriately cared for the children and then blamed the caseworker for not providing additional support. The trial court did not accept his explanation for their prior failings and found that:

31. On November 4, 2021, the children were removed from the [Great-grandparents'] home and placed with other family members.

32. The [Great-grandparents] reported multiple times that Mother should be permitted to visit with the children.

33. Since the children were removed from the [Great-grandparents'] home, the children's behaviors have improved.

34. Concern's with the [Great-grandparents] include:

    a.      Lack of supervision, children are young, didn't follow through with making appointments for the children while the children were in the [Great-grandparents'] custody.

    b.      The [Great-grandparents] did not take [C.C.] to Help Me Grow appointment. [C.C.] did not receive needed vaccinations while in the [Great-grandparents'] care.

    c.      The [Great-grandparents] did not get [J.C.] a fetal alcohol syndrome (FAS) assessment.

Judgment Entry, Oct. 13, 2022.

{¶40} The November 2021 transcript of the hearing on the removal of the children from the Great-grandparents' home provides a foundation for the findings of the trial court in the 2022 permanent custody hearing:

But what, what concerns me here is, Help Me Grow has been there since day one, that's been a requirement, and for the two of you to say that we just didn't do it because we just didn't think we had to, your, your testimony was, quite frankly, inconsistent, and not believable. You know, it was well, we were gonna do it, we initially waited, and then I felt that it wouldn't benefit the child. That wasn't your call to make, folks, that was my call, and I made that call at the very beginning of the case.

Transcript, Nov. 4, 2021, p. 103, line 21 to p. 104, line 5.

A fetal alcohol syndrome assessment, again, not your call. If there is a medical expert, a doctor, that says this is a referral for the child, the case plan is clear that that's required. You have to follow the assessments. And for you to come in today, and even in your testimony, be so reluctant that you are actually going to do it, I guess, I mean, your, your testimony, at some point was that you are willing to do the services if they can be done locally. Well, what the heck does that have to do with the children's best interest? Whether it's locally, or if it's out of town, if the children need it, the children need it, and that's what we need the person that's providing the care to these children to do, whatever is necessary for these children's best interests.

*Id.* at p. 104, lines 8-20.

**{¶41}** The trial court further found that it was "not convinced that the two of you are going to follow through with, with what's being asked, and what's being required" and that "[f]or whatever reason, that the two of you have chosen, rather than the paths of least resistance, just to do whatever you thought was best for the children, and that's not how it works in a Job and Family Services case." *Id.* at p. 105, lines 3-5; p. 106, lines 4-7.

**{¶42}** The trial court was also concerned that the Great-grandparents would encourage contact between the children and their Mother finding that "The [Great-grandparents] reported multiple times that Mother should be permitted to visit with the children." Judgment Entry, p. 5, ℙ 32. This concern arose from the fact that Mother was unable to maintain her sobriety and persistently tested positive for consumption of amphetamines and methamphetamines and had not been permitted to visit the children

as a result. Great-grandfather acknowledged that the Mother suffered from a drug addiction but conceded that he was not always able to determine whether she was under the influence. Further, Mother gave birth to a fourth child and took that baby to her home and not only was Great-grandfather not concerned about the safety of the child being cared for by a drug addict, he "didn't even think about it." Transcript, Dec. 19, 2022, p. 185, line 4.

{¶43} Great-grandparents did not think to seek legal custody of the children until TCJFS filed the motion for permanent custody, presumably content with their monthly visitation with the children. While the motion was appropriately filed and the Revised Code only requires such a motion to be filed prior to the dispositional hearing, we find that the timing of this motion supports the trial court's concern that the Great-grandparents will follow their inclination to allow the children contact with their Mother regardless of her sobriety. And, while this Court and the trial court recognize that there is a bond between the Great-grandparents and the children, the timing of the motion can be viewed as serving their concerns rather than the best interest of the children.

{¶44} If the Great-grandparents believed that the best interests of the children would be served by placing legal custody with them, it would be logical for them to take steps to prepare for the return of the children and pursue legal custody prior to the filing of the motion for permanent custody. During the hearing on the removal of the children from their home, the discharge report from the Goodwill In-Home Parenting Program recommended that they attend counseling, but they decided to forgo that opportunity and there is no evidence they fulfilled that requirement before the seeking legal custody. *Id.* at p. 176 line 18 to p. 177 line 1. And the record could support a conclusion that their

motion was not motivated by their concern for the best interest of the children, but by the realization that the parents had not resolved the problems that caused the removal of the children from the home, that permanent custody would most likely be granted and that they would lose contact with the children.

**{¶45}** The trial court issued a lengthy entry and we find that it considered all the relevant evidence to determine what disposition was in the best interest of the children. The GAL spoke on behalf of the children, recommending the grant of permanent custody for these children who were too young to form and express their own opinions. The trial court also acknowledge the relationship between the children and the Great-grandparents, but still concluded that permanent custody best served the children's interest by providing a final resolution fostering growth, stability and security.

**{¶46}** We have reviewed the record and find the trial court did not abuse its discretion by finding that the best interest of the children was served by denying the Great-grandparents legal custody. Furthermore, the decision of the trial court to grant permanent custody to TCJFS was not against the manifest weight of the evidence.

**{¶47}** Accordingly, the sole assignment of error is denied.

**{¶48}** The decision of the Tuscarawas County Common Pleas Court, Juvenile Division, is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.