[Cite as *In re C.R.M.*, 2024-Ohio-2279.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. John W. Wise, J. |
| C.R.M., | Hon. Craig R. Baldwin, J. |
| C.M., and | Case Nos. 24 COA 005, 006, 007 |
| G.M. | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 2021-3032, 3033, 3034 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 13, 2024 |

APPEARANCES:

For Plaintiff-Appellee

BETH A. LIGGETT
ASSISTANT PROSECUTOR
110 Cottage Street, Third Floor
Ashland, Ohio  44805

For Defendant-Appellant

BRIAN A. SMITH
BRIAN A. SMITH LAW FIRM, LLC
123 South Miller Road, Suite 250
Fairlawn, Ohio  44333

*Wise, J.*

{¶1}    Father M.M. appeals the December 28, 2023, judgment entry of the Ashland County Court of Common Pleas, Juvenile Division, awarding permanent custody of C.R.M., C.M., and G.M. to the Ashland County Department of Job and Family Services (ACDJFS/Agency).   For the reasons that follow, we affirm the decision of the Juvenile Court.

### FACTS AND PROCEDURAL HISTORY

{¶2}    C.R.M., dob April 10, 2018, C.M., dob October 15, 2019 and G.M., dob February 15, 2021 are the biological children of F.M.  M.M. is the biological father of C.M. and G.M. but not the biological father of the oldest child, C.R.M.  M.M. filed his appeals on behalf of all three children, claiming loco parentis status of C.R.M.[1]

{¶3}    Paternity testing during the pendency of the case established N.R. as the biological father of C.R.M.   N.R. is not part of this appeal, voluntarily relinquished his parental rights and agreed to grant permanent custody of C.R.M. to the Agency. Tr. Jan. 20, 2023. The mother of the three children, F.M.,  did not file an appeal.

{¶4}    The family came to the attention of ACDJFS in 2021 based on two separate incidents.  First, on or about May 11, 2021, the Agency received a letter from a medical professional mandated reporter alleging medical neglect of the children. C.R.M., the oldest, was alleged to need neurological medical care and speech therapy which he was not receiving.  C.M. had a clubbed foot that was not being properly treated.  The infant, G.M., was found to have hemangioma that may obstruct her ability to feed if not attended.

---

[1] For clarity, the oldest child will be referred to as C.R.M.  He does not carry M.M.'s last name.

{¶5}    The second incident occurred on May 22, 2021. Law enforcement officers were dispatched to an emergency call for the infant, G.M. Her father, Appellant M.M., called 911 when he claimed that he propped up a bottle for her to feed and heard "gurgling noises".

{¶6}    The infant was taken to the hospital and later life flighted to Rainbow Babies and Children's Hospital.  It was discovered during the hospitalization that she had serious life-threatening injuries - three skull fractures from ear to ear, a traumatic brain injury, brain bleeds, five broken ribs, hematoma on her intestines, severe diaper rash with open wounds, trauma to her throat, an internal temperature of 94 degrees and lacked appropriate neurological reflexes. Neither F.M. nor M.M. could account for the injuries to G.M.  Medical providers opined they were nonaccidental and caused by an adult.

{¶7}    The home was in deplorable condition with rotting food, baby bottles containing spoiled milk, cigarette butts within the reach of the children, multiple scattered items all over the floors, and no safe sleeping places for the children.   Their mother, F.M., admitted that she was taking suboxone without a prescription and refused to submit to a drug screen.

{¶8}    All three children were removed from the home that day under an emergency Juvenile Rule 6 motion.

{¶9}    A shelter care hearing was timely scheduled and the trial court appointed counsel to represent both the mother, F.M., and M.M., the father of C.M. and G.M.  The father of C.R.M. was not present at the hearing.  At a later adjudicatory hearing, C.M. and C.R.M. were found to be dependent children. The infant, G.M., was found to be an abused and dependent child.  Temporary custody was awarded to ACDJFS.

{¶10} Case plans were prepared by the Agency for both M.M. and F.M. and approved and adopted by the trial court. The case plans included mental health counseling, substance abuse treatment, parenting education, counseling, stable housing, and drug and alcohol screening.

{¶11} On October 21, 2022, the ACDJFS filed its motion for permanent custody of all three children.

{¶12} On January 27, 2023, January 30, 2023, and February 1, 2023, the Agency's motion for permanent custody came on for evidentiary hearing before the trial court.

{¶13} Both mother and M.M. appeared and were represented by counsel. At the time of the hearing, F.M. and M.M. were not living together. Indeed, Sergeant Eggeman of the Ashland Police Department testified that he had responded to the home on at least three occasions for domestic violence in which F.M. was the victim. F.M. reported multiple incidents of M.M. slapping her, covering her mouth to keep her from screaming, choking her, throwing food at her, shaking her and yelling at her. She claimed that M.M. slapped her in front of C.R.M. At the time of the hearings, a temporary protection order was in place restricting contact between F.M. and M.M.

{¶14} Neither mother nor father had an explanation for the life-threatening injuries to the infant, G.M. So, too, they had no reasonable explanation for the lack of care of the two older children. At the time the children were placed in shelter care, three-year-old C.R.M. weighed fifty pounds and was morbidly overweight with speech impediments. C.M.'s clubbed foot was not receiving proper care or treatment.

{¶15} Evidence was presented that neither mother nor M.M. had successfully complied with their Case Plans. Forty-eight drug screens were given to M.M. and thirty five of them were positive for amphetamine, methamphetamine, cocaine, buprenorphine or a combination of drugs. He tested positive for drugs several times before scheduled visits with the children, showed up for parenting classes two times, and was a no-show five times. Forty-five drug screens were administered to F.M., and thirty five were positive for amphetamine, methamphetamine, buprenorphine or a combination of drugs. A social worker who was present during the supervised visitation with the children opined that mother was high on drugs on at least one of the visitations.

{¶16} At the hearing, Appellant M.M. testified that he was not working, had no vehicle and lived with the stepfather of F.M. He testified that he would be ready to obtain custody of the children and provide for their care in ninety days to six months. Tr. 425.

{¶17} He had no explanation for the life-threatening injuries to G.M. claiming that he cooperated in the investigation and he was, therefore, absolved of responsibility.

{¶18} Mother, F.M., testified that she had no idea how G.M.'s skull fractures or broken ribs happened. According to mother and father, they never saw any changes in G.M. from the time she was born to the time she was found with her life-threatening injuries. Mother testified that she was in a temporary residence but hoped to be ready to obtain custody of the children sometime in the future.

{¶19} Both the guardian ad litem and CASA recommended that permanent custody be granted to ACDJFS.

{¶20} At the conclusion of the three days of hearings, the trial court took the matter under advisement and issued a twenty-page judgment entry on December 28, 2023.

{¶21} It was the finding of the trial court, based on the evidence, that neither parent had completed the Case Plan requirements or otherwise addressed the underlying original concerns of substance use, mental health, parenting education, criminal drug activity and violence. Finding of Fact No. 11, Judgment Entry Dec. 28, 2023. "Neither M.M. or F.M. have consistently demonstrated a desire to change or improve through participation in case plan services." Finding of Fact No. 19, Judgment Entry Dec. 28, 2023.

{¶22} The trial court found clear and convincing evidence pursuant to R.C. 2151.414 to grant permanent custody of C.R.M., C.M. and G.M. to ACDJFS. Specifically, the trial court found that the children had been in the temporary legal custody of ACDJFS for 12 months of the preceding 22 consecutive month period at the time of the filing of the motion for permanent custody, and that a grant of permanent custody is in the best interests of the children. Judgment Entry, Dec. 28, 2023 at 19. It terminated the parental rights and responsibilities of all parents. Judgment Entry, Dec. 29, 2023 at 20.

{¶23} M.M., father of C.M. and G.M., timely filed an appeal. M.M. also appealed the grant of permanent custody of C.R.M. to ACDJFS alleging he has standing under the theory of loco parentis. M.M. argues the following two assignments of error as to C.M. and G.M. As to C.R.M., M.M. alleges standing under the theory of loco parentis and that his trial counsel rendered ineffective assistance.

**ASSIGNMENTS OF ERROR AS TO C. M. AND G.M.**

{¶24} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO APPELLEE, ASHLAND COUNTY JOB AND FAMILY SERVICES, SINCE APPELLEE FAILED TO DEMONSTRATE, BY CLEAR AND CONVINCING EVIDENCE, THAT

GROUNDS EXISTED FOR PERMANENT CUSTODY, AND SINCE THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO APPELLEE, ASHLAND COUNTY JOB AND FAMILY SERVICES, BECAUSE THERE WAS NOT COMPETENT, CREDIBLE EVIDENCE THAT APPELLEE MADE 'REASONABLE EFFORTS' TO 'REUNIFY THE FAMILY'."

## ASSIGNMENTS OF ERROR AS TO C.R.M.

{¶26} "I. THE FAILURE OF APPELLANT, M.M.'S TRIAL COUNSEL TO FILE A MOTION TO INTERVENE, IN CASE NUMBER 2021-3032, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

**{¶27}** "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO APPELLEE, ASHLAND COUNTY JOB AND FAMILY SERVICES, BECAUSE THERE WAS NOT COMPETENT, CREDIBLE EVIDENCE THAT APPELLEE MADE 'REASONABLE EFFORTS' TO 'REUNIFY THE FAMILY'. "

## LAW AND ANALYSIS

*Standing of M.M. to appeal permanent custody of C.R.M. to Agency*

{¶28} Before we reach the substance of appellant's arguments, we must address an important threshold issue raised by appellee; namely, whether M.M. has standing to file an appeal challenging the ruling of the trial court granting permanent custody of C.R.M. to the Agency.

{¶29}  Appellee filed a motion to dismiss the appeal of M.M. in Case No. 24-COA-005 for the reason that M.M. is not the biological father of C.R.M.  M.M. filed an appeal under the theory that he was a party and held loco parentis status.

{¶30}  Evidence established that M.M. has been with the mother of C.R.M. since the child was 2-1/2 to 3 months old.  C.R.M. was removed from the care of his mother in May, 2021 when the child was three years old.  M.M., prior to this action, never sought to obtain custody of C.R.M. through statute, court order, or other means.

{¶31}  The record demonstrates that H.R. is the biological father of C.R.M., approved of the Agency's motion for permanent custody of C.R.M., and objected to M.M. having any custodial rights to C.R.M.  At the time of the permanent custody hearing, M.M. and C.R.M.'s mother  no longer lived together.

{¶32}  During the pendency of this matter, the grandmother of C.R.M., H.R.'s mother, filed a motion to intervene, and it was denied by the trial court.  M.M., knowing he was not the biological father from the beginning of his relationship with the mother, never filed a motion to intervene in this matter.  He now blames ineffective assistance of counsel (Assignment of Error No. 1).

{¶33}  We find that M.M. has no legally protected interest in the custody of C.R.M. and lacks standing to challenge the award of permanent custody of C.R.M. to the Agency.

{¶34}  A court is required to join only those parties with colorable rights to custody or visitation.  *In re. Hoffman,* 5th Dist., Stark No. 2002 CA 0419, 2002 CA 0422, 2003-Ohio-1241, at ¶ 22; *In re: Goff,* 11 Dist., Portage No. 2001 CA 0144, 2003-Ohio-6768, at ¶ 15.

{¶35} The right to claim loco parentis assumes a legally protected interest from one who assumed parental duties for the benefit of the child. We find that it is not in the best interests of C.R.M. for M.M. to assume any parental rights. The record demonstrates that C.R.M. was removed from the home for reasons that included failure to meet his medical and psychological needs. The home was in deplorable condition, M.M. committed acts of domestic violence in front of C.R.M. and failed to maintain sobriety and comply with the Agency's case plan. He had no explanation for the life-threatening injuries to C.R.M.'s half sibling, G.M.

{¶36} In short, M.M. cannot claim standing under the theory of loco parentis when he has failed to demonstrate that he assumed parental duties that are of benefit to C.R.M. *In Re: DDO,* 11th Dist., Lake No. 2011-L-054, 2011-Ohio-6209 (holding that no abuse of discretion to deny motion to intervene to grandmother who sought to intervene in permanent custody case claiming loco parentis where she was the abuser of three other children).

{¶37} So, too, M.M.'s claim to standing is moot where the trial court found that C.R.M. was in the custody of ACDJFS for twelve or more months of a consecutive twenty-two-month period. R.C. 2151.414(B)(1)(d), Judgment Entry, December 28, 2023 at 19.

{¶38} Proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. M.M. does not dispute this finding.

{¶39} We hold that M.M. does not have standing to appeal the trial court's award of permanent custody of C.R.M. to ACDJFS and reject appellant's claim that his trial counsel was ineffective in failing to file a motion to intervene.

**I, II**

*Standard of Review in Permanent Custody*

{¶40} In *In re: Z.C.,* 173 Ohio St.3d 359, 2023-Ohio-4703, 220 N.E.3d 1130, the Ohio Supreme Court resolved a certified conflict between two Ohio appellate districts regarding the appropriate standard of review for permanent custody decisions made pursuant to R.C. 2151.414. *Id.* ¶ 1. The Court was asked to determine whether the appropriate standard of review of such a decision was abuse of discretion or sufficiency of the evidence and/or manifest weight of the evidence. The Court concluded that the appellate standard of review for a permanent custody decision was sufficiency of the evidence/manifest weight of the evidence. *Id.* ¶ 18. Recognizing that sufficiency and manifest weight are separate and distinct standards, the Court stated that the appellate court must apply the standard "as appropriate depending on the nature of the arguments that are presented by the parties." *Id.* ¶ 11.

{¶41} On remand from the Ohio Supreme Court, this Court applied the sufficiency of the evidence/manifest weight of the evidence to an appeal granting permanent custody to the Tuscarawas County Job and Family Services. See *Matter of J.C.,* 5th Dist., Tusc. Nos. 2022 AP 11 0044, 2022 AP 11 0045, 2022 AP 11 0046, 2024-Ohio-1505, ____N.E.3d ____.

{¶42} Here, M.M. frames his alleged errors in the trial court granting permanent custody to ACDJFS as against the manifest weight of the evidence and lack of clear and convincing evidence.

{¶43} Therefore, we review the assigned errors under a sufficiency of the evidence/manifest weight of the evidence standard.

{¶44} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered. *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist., 1983); *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541

{¶45} Because the fact finder is in the best position to weigh the credibility of the witnesses and observe their demeanor, a reviewing court will always be mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179 972 N.E.2d 517, ¶ 21.

{¶46} Sufficiency of the evidence, on the other hand, is a test of adequacy. *In re: Z.C., supra,* ¶ 13 quoting *Thompkins* at 386, 678 N.E.2d 541. "When applying a sufficiency of the evidence standard, a court of appeals should affirm a trial court when 'the evidence is legally sufficient to support the jury's verdict as a matter of law.'" *Id.* ¶13 (citations omitted).

*Burden of Proof for Permanent Custody*

{¶47} An award of permanent custody must be based on clear and convincing evidence, R. C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing

court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in a criminal case.  It does not mean clear and unequivocal." *Matter of J.C., supra,* ¶ 25, quoting *In re: Estate of Haynes,* 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

*R. C. 2151.414(B) Determinations by Trial Court*

{¶48}  Pursuant to R.C. 2151.414(B), a trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that one of five circumstances apply.  In practice, a trial court will usually determine whether one of the five circumstances outlined in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child.

{¶49}  R.C. 2151.414(B) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the Agency and that any of the following apply:  (a)  The child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-

two-month period; (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state..

{¶50} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time, or should not be placed with the parents.

{¶51} Here, the trial court made findings pursuant to R.C. 2151.414(B)(1)(a) (Reasonable time), R.C. 2151.414(B)(1)(d) (12 months in 22 months) and 2151.414(E) (permanent home and other relevant factors):

{¶52} Based upon the evidence in totality, the Court finds by clear and convincing evidence:

1. These children should not be returned to the custody of any of their parents and that to return them to their parent would not be in their best interest;

2. The children have been in the temporary custody of the Ashland County Department of Job and Family Services for more than two (2) years and the Court cannot grant any further extensions of temporary legal custody;

3. The children do not qualify for planned permanent living arrangement because they are all under the age of 16;

4. No person has filed a motion seeking legal custody of the children; and

5.    A grant of permanent custody is in the best interests of the children.

{¶53}  Judgment Entry, Dec. 28, 2023 at 19.

{¶54}  The trial court made several findings of fact.  Judgment Entry, Dec. 28, 2023 at 5-9. Appellant disputes many of the trial court's findings of facts.  First, appellant claims the trial court erred in finding that the children have been exposed to physical and verbal abuse and/or violence and have not been well cared for by the parents.  Appellant claims that because he was not criminally charged with abuse of G.M. and because he cooperated with the investigation, that finding is against the manifest weight of the evidence.

{¶55}  The finding of the trial court was in keeping with the evidence presented. Medical providers found that G.M.'s life threatening injuries were not accidental and were caused by an adult.  M.M. offered no explanation for how the injuries occurred. As noted by appellee, the clear and convincing evidence standard does not require proof beyond a reasonable doubt. So, too, he had no reasonable explanation for the findings by the medical providers that C.M.'s clubbed foot was not properly treated.

{¶56}  The trial court also heard evidence of the domestic violence caused by M.M. Law enforcement testified to the claims of F.M. that M.M. had slapped her, choked her, threw food at her, shook her, and yelled at her.  At the time of the hearings, there was a temporary protection order in place, and M.M. and F.M. were not living together.  There was also evidence that some of these incidents of violence occurred in front of the children.

{¶57} Appellant next claims that the trial court's finding that neither parent has completed the case plans or addressed the concerns of substance use, mental health, parenting education, criminal drug activity and violence is against the manifest weight of the evidence. Other than M.M.'s self-serving testimony, the evidence revealed that he consistently failed drug tests, failed to attend parenting classes, and failed to address his mental health needs including his propensity for violence. A finding that a parent has satisfied some case plan goals does not equate to a finding that the parent has the ability to assume custody of a child. R.C. 2151.44(E)(1); *In re: L.R.L.,* 10th Dist., Franklin No. 220AP-281, 2023-Ohio-2071, 218 N.E.3d 284, at ¶ 44.

{¶58} The trial court also found that M.M. consistently demonstrated no desire to change or improve through participation in case plan services. This finding of the trial court was not against the manifest weight of the evidence.

{¶59} At the hearing on permanent custody, M.M. testified that he was not working, did not have a vehicle, and lived with the stepfather of F.M. He provided no evidence, other than his uncorroborated self-serving testimony that he was capable of providing the children with stability and safety.

{¶60} There was clear and convincing evidence that M.M. could not provide stable housing to his children at the time of the hearing or in the reasonable future. Indeed, he testified that it would take him another ninety days to six months to be ready for placement of the children.

{¶61} M.M. also claims that he had a bond with his children. However, the evidence demonstrates that any detriment which may occur by severing any bond is outweighed by the benefits of permanency and stability for the children.

{¶62}   So too, the children have been in the custody of ACDJFS in excess of twelve months of a consecutive twenty-two-month period. R.C. 2151.414(B)(1)(d) and the trial court made that specific finding. This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody.  *In re: D.H.,* 5th Dist., Licking No. 2022 CA 00025, 2022-Ohio-4495, ¶ 59.  Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence.

{¶63}  In short, the trial court did not err in finding that grounds existed for permanent custody, and its finding is based on sufficient evidence and is not against the manifest weight of the evidence. *Matter of L.G.,* 5th Dist., Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

*Best Interest Determination by Trial Court*

{¶64}  In determining the best interest of the child at the permanent custody hearing, the trial court must consider all relevant factors, including but not limited to the following:  (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child, R.C. 2151.414(D).

{¶65}  We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child and should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned."  *In re: E.H.,* 5th Dist., Stark No. 2022CA00007, 2022-Ohio-1682, ¶ 101 quoting *In re. Manzy Children,* 5th Dist., No. 2000CA00244, 2000 WL 170073 (Nov. 13, 2000) citing *In re: Awkal, 9*5 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist., 1994).

{¶66}  The trial court found that it is in the children's best interests that ACDJFS be awarded permanent custody and thus eligible for a permanent adoptive home. We find there was competent, credible evidence to support the trial court's decision and it is not against the manifest weight of the evidence.

{¶67}  The trial court heard the testimony of the case workers assigned to the children's case, read the final report of the GAL and the Court appointed special advocate (CASA) who opined that it was in the best interests of the children that ACDJFS be granted permanent custody.

*Reasonable Efforts to Reunite Children*

{¶68}  Finally, M.M. argues that the evidence failed to demonstrate that the Agency made reasonable efforts to reunite the children with M.M.  M.M. takes specific umbrage with the alleged failure of the Agency to provide him with random drug testing, parenting classes and counseling meeting his work schedule. The evidence belies those claims. M.M. appeared for one color-coded test out of 28 times that his color was called.  His excuse that he was working lacked credibility.  Indeed, he tested positive for drugs on the

days that he was scheduled for supervised visitation with the children. His consistency for counseling appointments was no better.

{¶69} M.M. was diagnosed with stimulant use disorder and adjustment disorder with anxiety and depression. He did little to comply with his treatment plans to address his multiple diagnoses.

{¶70} We find that the trial court did not err in determining that the children could not be placed with M.M. within a reasonable time. *In re: C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 50.

## CONCLUSION

{¶71} This Court finds that the trial court carefully weighed the evidence and found by clear and convincing evidence that C.R.M., C.M. and G.M. cannot be placed with F.M., M.M. or H.R. within a reasonable time, and that permanent custody of the children to ACDJFS is in their best interest.

{¶72} Appellant's Assignments of Error as to C.M and G.M. are overruled. Appellant has no standing to appeal the permanent custody award of C.R.M. to the Agency.

{¶73}  The judgments of the Court of Common Pleas, Juvenile Division, Ashland County, Ohio, are affirmed.


By: Wise, J.

Delaney, P. J., and

Baldwin, J., concur.



JWW/kt 0610