[Cite as *In re S.M.*, 2026-Ohio-319.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF:<br><br>S.M. (DOB: 1/22/2024) | Case No. 2025CA0020<br><br><u>Opinion And Judgment Entry</u><br><br>Appeal from the Coshocton County Court of Common Pleas, Juvenile Division, Case No. 20243005<br><br>Judgment:  Affirmed<br><br>Date of Judgment Entry: February 2, 2026 |

**BEFORE:** Craig R. Baldwin; William B. Hoffman; David M. Gormley, Judges

**APPEARANCES:** KATELYNN R. DAVIS, Assistant Prosecuting Attorney, for Appellee-Coshocton County JFS; RICHARD HIXSON, for Appellant-Father N.M.; JEANNETTE MOLL, Appellee-Guardian Ad Litem

*Baldwin, P.J.*

{¶1}  Appellant N.M., the biological father of minor children S.M. and M.M., appeals the decision of the trial court terminating his parental rights and granting permanent custody of S.M. and M.M. to appellee Coshocton County JFS ("appellee JFS").  For the reasons that follow, we affirm the decision of the trial court.

**STATEMENT OF FACTS AND THE CASE**

{¶2}  Twins S.M. and M.M. were born on January 22, 2024. At the time of their birth, the appellant was under a case plan with appellee JFS with regard to the older

siblings of S.M. and M.M. The appellant had not completed plan services for the older siblings' case plans at the time of the twins' birth.[1]

{¶3} On January 22, 2024, the day of S.M. and M.M.'s birth, appellee JFS requested and was granted an ex parte order placing S.M. and M.M. into the emergency temporary custody of appellee JFS. Appellee JFS then placed S.M. and M.M. into a foster home.

{¶4} On January 23, 2024, appellee Guardian Ad Litem Jeanette M. Moll ("appellee GAL"), who had also served as the GAL for some of S.M. and M.M.'s older siblings, filed complaints regarding S.M. and M.M. alleging dependency and neglect. A shelter care hearing was conducted, and S.M. and M.M. were continued in the emergency temporary custody of appellee JFS. A follow-up shelter care hearing was scheduled for January 29, 2024, after which S.M. and M.M. remained in the emergency temporary custody of appellee JFS. S.M. and M.M. were moved to the foster home of B.T. and his wife B.T. at the beginning of February, 2024.

{¶5} On February 20, 2024, an adjudicatory hearing took place at which S.M. and M.M. were adjudicated dependent pursuant to R.C. 2151.04(C) by agreement, and the neglect allegations were dismissed. A dispositional hearing was continued to a later date so that a case plan could be filed for S.M. and M.M. A case plan was filed on March 18, 2024, and the dispositional hearing took place on March 25, 2024, at which time S.M. and M.M. remained in the temporary custody and protective supervision of appellee JFS.

---

[1] The biological mother of S.M. and M.M., who has not filed an appeal herein, was also subject to the older siblings' case plan, and had also not completed plan services at the time of the twins' birth.

{¶6}    On May 16, 2024, the appellee GAL filed motions for permanent custody of S.M. and M.M., as well as their older siblings. The trial court conducted a permanent custody hearing on August 12-13, 2024. The appellee GAL presented testimony from the following individuals: B.Y., a foster parent for the older siblings; B.T., a foster parent for S.M. and M.M.; Elizabeth Ballantine, an appellee JFS caseworker; Lexi Thompson, an appellee JFS caseworker; Aleisha Youngen, an appellee JFS caseworker; Deputy Albert Havranek of the Coshocton County Sheriff's Office; L.M., a paternal aunt and placement for the older siblings; Cheryl Mullet, a counselor for one of the older siblings; Abigail Miller, a counselor for two of the older siblings; V.B., foster parent for three of the  older siblings; and, Katie Barnett, an appellee JFS caseworker. Numerous exhibits were entered into evidence. Neither the appellant, S.M. and M.M.'s biological mother, nor appellee JFS presented evidence at the August 12-13, 2024, hearing. All parties submitted written summations. The permanent custody motions filed by the appellee GAL were granted as to the older siblings. However, the permanent custody motions for S.M. and M.M. were denied, in part because statutory timelines had not been met.

{¶7}    On January 14, 2025, appellee JFS requested a six-month extension of temporary custody of S.M. and M.M., and filed a case plan. The requested extension was granted at the annual court review on January 15, 2025, and all prior orders were continued.

{¶8}    On January 17, 2025, the appellant, together with S.M. and M.M.'s mother, filed a joint motion for unsupervised visits. The joint motion was scheduled for hearing on March 26, 2025, together with the hearing on the case plan that had been filed January

14, 2025. The trial court denied the motion for unsupervised visitation following the hearing.

**{¶9}** On March 27, 2025, the appellee GAL again filed motions for permanent custody requesting that permanent custody of S.M. and M.M. be granted to appellee JFS. The matter proceeded to hearing on July 10, 2025. The trial court took judicial notice of all testimony and evidence presented at the August 12-13, 2024, permanent custody hearing.[2] The appellee GAL then presented the testimony of B.T., a foster parent for S.M. and M.M., and Katie Barnett, an appellee JFS caseworker, as well as the appellee GAL's own testimony. The appellee GAL described concerns that were present with regard to S.M. and M.M.'s older siblings, including: domestic violence in the home; use of one of the older siblings as a shield in the middle of the domestic violence; bed bugs (the older siblings described hiding in a closet to escape being bitten by bed bugs); locking the older siblings out of the home; medical neglect; educational neglect and truancy issues; and, instability and substance abuse issues. Permanent custody of the older siblings had been granted to appellee JFS. The appellee GAL was concerned that S.M. and M.M. were too young to self-report or self-protect in the face of the risk factors which had been present on multiple fronts with regard to S.M. and M.M.'s older siblings. Furthermore, the appellee GAL noted the appellant's poor attendance at supervised visits with S.M. and M.M. Neither the appellant, S.M. and M.M.'s mother, nor the appellee JFS presented evidence at the July 10, 2025, hearing. Numerous exhibits were admitted into evidence.

---

[2] The July 10, 2025, hearing transcript is the only transcript contained in the record before this Court in this case.

**{¶10}** On September 5, 2025, the trial court issued a Judgment Entry granting the appellee GAL's motion for permanent custody, finding, inter alia, that S.M. and M.M. had been in the temporary custody of the appellee JFS for twelve (12) months of a twenty-two (22) month period, and that it was in their best interests for permanent custody to be granted to appellee JFS.

**{¶11}** The appellant filed a timely notice of appeal in which he sets forth the following sole assignment of error:

**{¶12}** "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF S.M. AND M.M., AS SUCH A FINDING WAS UNSUPPORTED BY SUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### STANDARD OF REVIEW

**{¶13}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*, citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶14}** The Ohio Supreme Court addressed the standard of review in permanent custody cases in the case of *In re Z.C.*, 2023-Ohio-4703:

Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

We have described an appellate court's task when reviewing a trial court's application of the clear-and-convincing-evidence burden of proof as follows: "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (1887), paragraph two of the syllabus; *accord Cross* at 477, 120 N.E.2d 118.

\* \* \*

. . . sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review

of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties. *Id.* at ¶7-8, 11.

**{¶15}** The *Z.C.* Court went on to define sufficiency of the evidence and manifest weight as follows:

Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are " 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. We have stated that "sufficiency is a test of adequacy," *Thompkins* at 386, 678 N.E.2d 541, while weight of the evidence " 'is not a question of mathematics, but depends on its *effect in inducing belief*' " (emphasis sic), *id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at 386, 678 N.E.2d 541. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when " 'the evidence is legally sufficient to support the jury verdict as a matter of law." ' " *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, 678 N.E.2d 541, quoting *Black's* at 1433.

But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for

manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id*. at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 13-14.

## ANALYSIS

{¶16} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child.

**{¶17}** R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that 1) it is in the best interest of the child to grant permanent custody to the agency; and, 2) that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

Thus, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody.

**{¶18}** In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interests of the child. The Court in *In re C.R.M.*, 2024-Ohio-2279 (5th Dist.) stated:

> This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In re: D.H.*, 5th Dist., Licking No. 2022 CA 00025, 2022-Ohio-4495, ¶ 59. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence.

*Id.* at ¶62. In this case, the trial court found that the R.C. 2151.414(B)(1)(d) factor applied, as S.M and M.M. had been in the temporary custody of appellee JFS for more than twelve (12) months of a twenty-two (22) month period. Moreover, the appellant concedes in his appellate brief that S.M. and M.M. "were in fact placed in the temporary custody of the agency and remained so for twelve (12) months of a twenty-two (22) month period, as that matter is evident from the record."

**{¶19}** The trial court also considers all relevant evidence before determining that the children cannot be placed with either parent within a reasonable time or should not

be placed with the parents. See, R.C. 2151.414(E). The statute also provides that if the trial court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine that the children cannot or should not be placed with the parent. The trial court may determine that a child cannot be placed with a parent within a reasonable time, or should not be placed with a parent, upon the existence of any one of the factors listed in R.C. 2151.414(E). Thus, the existence of just one factor will support a finding that the child cannot be placed with the parent within a reasonable time. See, *In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶20} R.C. 2151.414(E) states in pertinent part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child

to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

\* \* \*

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

\* \* \*

(16) Any other factor the court considers relevant.

**{¶21}** In this case, the record establishes the appellant's parental rights were involuntarily terminated with respect to four of the appellant's other biological children. Because the existence of one R.C. 2151.414(E) factor alone supports the finding that S.M. and M.M. cannot be placed with the appellant within a reasonable time, the best

interest analysis need not go any further. The appellant's argument that there is little evidence of maltreatment of S.M. and M.M. is disingenuous in light of the fact that, due to the maltreatment of the older siblings, S.M. and M.M. were removed from the appellant immediately following their birth and he has had only supervised visitation with them. Further, the appellant's characterization of the concerns as merely historical is also disingenuous in light of the temporal proximity of the older siblings' case to the case sub judice.

{¶22} Moreover, the evidence presented at the July 10, 2025, hearing also established that the appellant failed to demonstrate a commitment to S.M. and M.M. The testimony was unrefuted that the appellant only attended 28 out of 51 scheduled supervised visits with S.M. and M.M. at one location, and only attended 38 out of 52 scheduled supervised visits with S.M. and M.M. at another location, failing to engage in supervised visits with S.M. and M.M. for over one-third of the time.

{¶23} The trial court properly found by clear and convincing evidence that permanent custody was in the best interests of S.M. and M.M. due the involuntary termination of the appellant's parental rights with regard to four of his other children, and the appellant's continued demonstration of a lack of commitment to S.M. and M.M. as evidenced by his cancellation of multiple supervised visits.

### CONCLUSION

{¶24} Based upon the foregoing, we find that the trial court's decision to award permanent custody of S.M. and M.M. to appellee Coshocton County JFS was warranted, was in the best interest of S.M. and M.M., was based upon competent, credible evidence,

and was not against the sufficiency or manifest weight of the evidence. The evidence contained in the record supports the trial court's judgment. We therefore overrule the appellant's sole assignment of error and affirm the decision of the Coshocton County Court of Common Pleas, Juvenile Division.

{¶25} Costs to appellant.

By: Baldwin, P.J.

Hoffman, J. and

Gormley, J. concur.